**THE MILLS LAW FIRM**
Robert W. Mills, Esq. (Bar No. 062154)
rwm@millslawfirm.com
Joshua D. Boxer, Esq. (Bar No. 226712)
josh@millslawfirm.com
Corey B. Bennett, Esq. (Bar No. 267816)
corey@millslawfirm.com
880 Las Gallinas Avenue, Suite 2
San Rafael, California 94903
Telephone: (415) 455-1326
Facsimile: (415) 455-1327
-and-
**BRAMSON, PLUTZIK, MAHLER & BIRKHAEUSER**
Robert Bramson, Esq. (Bar No. 102006)
rbramsonrbramson@bramsonplutzik.com
2125 Oak Grove Rd., Suite 120
Walnut Creek, CA 94598
Tel (925) 945-0200
Fax (925) 945-8792
***Attorneys for Plaintiffs Nina Giampaoli & John Elbert***

FILED
FEB 22 2013
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

NC

C 13 0828

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

NINA GIAMPAOLI and JOHN ELBERT, on behalf of themselves and all others similarly situated

Plaintiffs,

v.

ANHEUSER-BUSCH COMPANIES, LLC,

Defendant.

Case No.
**CLASS ACTION**

**PLAINTIFFS' COMPLAINT FOR DAMAGES:**

1. **Violations of the Missouri Merchandising Practices Act, Mo. Ann. Stat. §§ 407.010 *et seq.***
2. **Unlawful Business Practices, Cal. Bus. & Prof. Code § 17200 *et seq;***
3. **Unfair Business Practices, Cal. Bus. & Prof. Code § 17200 *et seq.;***
4. **Fraudulent Business Practices, Cal. Bus. & Prof. Code § 17200 *et seq.;*&**
5. **Violations of the California Consumer Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.;***
6. **Breach of Implied Warranty of Merchantability, Cal. Com. Code § 2314;**
7. **Violation of Magnusson-Moss Warranty Act, 15 U.S.C.A. § 2301.**

**DEMAND FOR JURY TRIAL**

Plaintiffs Nina Giampaoli and John Elbert ("Plaintiffs"), by and through their attorneys, bring this action individually and on behalf of all other similarly situated members of the public against Anheuser-Busch Companies, LLC. ("AB" or "Defendant"), for compensatory damages, restitution, and equitable, injunctive and declaratory relief. Plaintiffs allege, on information and belief except for information regarding their individual facts, as follows:

## NATURE OF THE ACTION

1. Defendant AB makes claims about the alcohol content of its malt beverages on its products' labels. In most instances, AB's decision to make such claims is purely voluntary. AB's claims are false in every instance and are based on its uniform corporate policy of overstating the amount of alcohol in each of AB's products. Using highly advanced process control instrumentation and corporate protocols, AB can and does identify and control, with great accuracy and precision, the exact alcohol content of each unit it sells, but nevertheless intentionally misrepresents each such product as having a greater amount of alcohol than it actually contains. By falsely representing the alcohol content of the products it sells, AB has violated Missouri's and California's consumer protection statutes as set forth below.

## PARTIES, JURISDICTION AND VENUE

2. The instant case is a class action brought by Plaintiffs Nina Giampaoli and John Elbert, individually and on behalf of other similarly-situated consumers, arising out of AB's uniform corporate policy of overstating the alcohol content of its products.

3. This Court has original jurisdiction pursuant to the Class Action Fairness Act of 2005 "(CAFA"), 28 U.S.C. § 1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which any member of a class of plaintiffs is a citizen of a State different from any defendant.

4. This Court has personal jurisdiction over AB because it is authorized to do business and does business in California; it has specifically produced, marketed and sold malt beverages in California, and has sufficient minimum contacts with this State and/or sufficiently and

purposefully avails itself to the markets of this State through its production, marketing and sales within this State, to render the exercise of jurisdiction by this Court permissible.

5. Venue as to AB is proper in this Court pursuant to 28 U.S.C. § 1391 in that many of the acts and transactions giving rise to this action occurred in this District and because AB:

a. Is authorized to conduct business in this District and has intentionally availed itself of the laws and markets within this District through the production, marketing and sales of alcoholic beverages in this District;

b. Does substantial business in this District; and

c. Is subject to personal jurisdiction in this District.

6. At all relevant times, Plaintiff Nina Giampaoli resided and continues to reside in Sonoma County, California. During the relevant time period, Giampaoli purchased AB's malt beverage products in reliance on the representations contained on AB's labels. Specifically, Giampaoli regularly purchased approximately one six-pack of Budweiser per week during the past four years at retailers such as Safeway and 7-Eleven in Sonoma County, California. Each container of Budweiser she purchased had a claim set forth on the label that the alcohol content of that container was 5 percent by volume. Giampaoli has since learned that these claims of 5 percent alcohol were in each case overstated. Giampaoli took AB's stated percentage of alcohol into account in making her purchases and would not have purchased AB's malt beverages had she known that AB's representations were false. Based on Defendant's representations and claims, Giampaoli purchased malt beverages that had less value than what she paid, and has accordingly suffered legally cognizable damages proximately caused by Defendant's misconduct. After learning the truth about AB's mislabeling of Budweiser, Giampaoli decided to stop purchasing it.

7. At all relevant times, Plaintiff John Elbert resided and continues to reside in Sonoma County, California. During the relevant time period, Elbert purchased AB's malt beverage products in reliance on the representations contained on AB's labels. Specifically, Elbert regularly purchased Budweiser during the past four years at various retailers in Sonoma

County, California. Each container of Budweiser he purchased had a claim set forth on the label that the alcohol content of that container was 5 percent by volume. Elbert has since learned that these claims of 5 percent alcohol were in each case overstated. Elbert took AB's stated percentage of alcohol into account in making his purchases and would not have purchased AB's malt beverages had he known that AB's representations were false. Based on Defendant's representations and claims, Elbert purchased malt beverages that had less value than what he paid, and has accordingly suffered legally cognizable damages proximately caused by Defendant's misconduct. After learning the truth about AB's mislabeling of Budweiser, Elbert decided to stop purchasing it.

8. AB is a Delaware limited liability corporation, wholly owned and controlled by Anheuser-Busch InBev SA/NV, a publicly-traded company (NYSE: BUD). Anheuser-Busch InBev SA/NV was formed in November of 2008 following the merger of InBev and Anheuser Busch. Following the merger, AB vigorously accelerated the deceptive practices described below, sacrificing the quality products once produced by Anheuser-Busch in order to reduce costs. AB's principal place of business is in St. Louis, Missouri. AB is registered to do business in the state of California, and in fact, California is the only state where AB operates two breweries. AB manufactures, markets, and sells alcoholic beverages to millions of consumers throughout the United States, including millions of consumers in California and in this District.

**FACTS**

9. AB possesses sophisticated process control technology that enables it to precisely identify and control the exact alcohol content of malt beverages to within hundredths of one percent (i.e. .01%). Because water is cheaper than alcohol, AB adds extra water to its finished products to produce malt beverages that consistently have significantly lower alcohol content than the percentage displayed on its labels. By doing so, AB is able to produce a significantly higher number of units of beer from the same starting batch of ingredients. However, consumers receive watered down beer containing less alcohol than is stated on the labels of AB's products. There

**are no impediments – economic, practical or legal – to AB accurately labeling its products to reflect their true alcohol content. Nevertheless, AB uniformly misrepresents and overstates that content.** On information and belief, AB's mislabels the alcohol content in this manner for at least the following products: "Budweiser"; "Bud Ice"; "Bud Light Platinum"; "Michelob"; "Michelob Ultra"; "Hurricane High Gravity Lager"; "King Cobra"; "Busch Ice"; "Natural Ice"; and "Bud Light Lime."

10. AB's uniform misrepresentations deceive reasonable consumers who rely on AB's labels, and allow AB to gain an unfair competitive advantage in violation of Missouri and California law.

**A. AB's Unlawful, Unfair and Fraudulent Business Practices**

11. AB's parent company, Anheuser-Busch InBev SA/NV, is the world's largest producer of alcoholic beverages. In 2011, its global production exceeded 10 billion gallons of malt beverages, on which it generated gross profits of more than $22 billion. In the United States alone, ABI operates 13 breweries, producing over three billion gallons of malt beverages in 2011.[1]

**i. <u>The Brewing Process for Malt Beverages</u>**

12. AB processes each batch of malt beverages utilizing what it terms "high gravity," meaning that certain key variables, such as alcohol content, are initially kept at specifications above the desired final product, until the last stage. At this last stage, water and CO2 are added to yield a final product.

13. At the heart of any alcoholic beverage process is "fermentation." This process involves yeast converting certain carbohydrates into ethanol (intoxicating alcohol to humans), and CO2 (carbon dioxide for carbonation). It is the expensive and time-consuming fermentation process that creates the alcohol content in the beverage, and it is this by-product, ethanol, which creates demand for alcoholic malt beverages. Hence, the economic incentive to "water down"

[1] See 2011 ABI Annual Report, p. 2, 8, 47.

malt beverages.

ii. **AB's Deliberate Misrepresentations**

14. Sometime prior to 2008, AB began using in-line alcohol measuring instrumentation, known as Anton Paar meters – technology which allows AB to measure the alcohol content of malt beverages to within hundredths of one percent (i.e. + or - 0.01%).

15. But AB does not use this precision technology, and resulting high accuracy, to provide consumers with exactly what is on the labels; instead, AB uses its precise knowledge of the alcohol content of its products to deceive consumers. During AB's "finishing adjustment process," the last process the malt beverage undergoes before it is bottled, AB waters down its products, "shaving" the total alcohol content to well below the percentage stated on its labels. Specifically, AB uses its technological prowess to produce malt beverages in which the alcohol content is consistently lower than the level it promises on its labels.

16. If AB chose to, it could use its Anton Paar meters to target the exact alcohol content of its finished products to conform to the representations on its labels. Conversely, since AB knows the precise alcohol content of each of its products, it could conform its labels for each such product to accurately state that content. Instead, and even though AB knows the true alcohol content of its products, it intentionally and falsely overstates the alcohol content of its malt beverages. AB never intends for the malt beverage to possess the amount of alcohol that is stated on the label. As a result, AB's customers are overcharged for watered-down beer and AB is unjustly enriched by the additional volume it can sell.

17. AB's conduct is intentionally deceptive and violates both Missouri's and California's general consumer protection statutes. Moreover, AB is also subject to various specific requirements for accuracy and honesty when claiming alcohol content of products sold to the general public. AB's failures to comply with these requirements, in addition to its voluntary

misrepresentations about the alcohol content of its malt beverages, violate Missouri's and California's consumer protection statutes.

18. On information and belief, AB products manufactured in Missouri are distributed throughout the 48 contiguous states and sold at retail for off-site consumption.

19. On information and belief, Plaintiffs purchased AB products manufactured in Missouri, as well as California, at retail stores in California.

## CLASS ACTION ALLEGATIONS

20. Pursuant to Federal Rules of Civil Procedure 23(a) and 23(b), Plaintiffs bring this action individually and on behalf of all others similarly situated. Plaintiffs will seek certification of the following class ("Nationwide Class"):

> All consumers residing in the 48 contiguous states who purchased at retail for personal, family or household purposes and not for re-sale, within five years before the date this suit was filed, one or more of the following Anheuser-Busch Companies, LLC products, which were manufactured in the state of Missouri for off-site consumption: "Budweiser"; "Bud Ice"; "Bud Light Platinum"; "Michelob"; "Michelob Ultra"; "Hurricane High Gravity Lager"; "King Cobra"; "Busch Ice"; "Natural Ice"; "Black Crown" and "Bud Light Lime."

21. Additionally, plaintiffs will seek certification of the following class ("California Class"):

> All consumers who purchased at retail for personal, family or household purposes and not for re-sale, within four years before the date this suit was filed, one or more of the following Anheuser-Busch Companies, LLC products at retail in the state of California for off-site consumption: "Budweiser"; "Bud Ice"; "Bud Light Platinum"; "Michelob"; "Michelob Ultra"; "Hurricane High Gravity Lager"; "King Cobra"; "Busch Ice"; "Natural Ice"; "Black Crown" and "Bud Light Lime."

22. ***Numerosity***: AB enjoys a 47.7% market share of the sale of malt beverages in the United States. Although the number of class members is not presently known, both classes are likely to be comprised of millions of consumers. The Classes are certainly so numerous that

joinder of all members of the Classes is impracticable.

23. ***Commonality***: As outlined below, common questions of law and fact exist as to all members of the Classes. Common questions of fact and law exist because, *inter alia*, Plaintiffs and all class members purchased AB's alcoholic beverages, which were deliberately misrepresented as containing more alcohol than they actually contained.

24. ***Adequacy of Representation***: Plaintiffs will fairly and adequately protect the interests of the members of the Classes. Plaintiffs have retained highly competent and experienced class action attorneys to represent their interests and that of the Classes. Plaintiffs and their counsel have the necessary financial resources to adequately and vigorously litigate this class action. Plaintiffs have no adverse or antagonistic interests to those of the Classes. Plaintiffs are willing and prepared to serve the Court and the Class members in a representative capacity, with all of the obligations and duties material thereto, and are determined to diligently discharge those duties by vigorously seeking the maximum possible recovery for class members.

25. ***Typicality***: Plaintiffs' claims are typical of the claims of the members of the Classes because they purchased and consumed alcoholic beverages that were deliberately misrepresented as containing more alcohol than they actually contained. Thus, Plaintiffs and class members sustained the same injury arising out of AB's common course of conduct in violation of law as complained of herein. The injury of each class member was caused directly by AB's wrongful conduct in violation of law as alleged herein.

**Rule 23(b) (3)**

26. This action is appropriate as a class action pursuant to Rule 23(b) (3) of the Federal Rules of Civil Procedure.

27. ***Common Questions of Law and Fact Predominate:*** The questions of law and fact common to the members of both Classes predominate over any questions affecting only individual members. These common questions include, but are not limited to:

a. Whether AB's products sold to Class members were labeled as containing more

alcohol than they in fact contained;

b. Whether AB deliberately, and as a matter of corporate policy, misrepresented their products sold to class members as containing more alcohol than they actually contained;

c. Whether AB engaged in deceptive and unfair business practices related to its representations about the alcohol content of the products it sold to Class members;

d. Whether Plaintiffs and Class members are entitled to declaratory, injunctive and/or equitable relief; and

e. Whether Plaintiffs and Class members are entitled to compensatory damages, including actual and statutory damages plus interest thereon and/or monetary restitution.

28. ***Superiority:*** A class action is superior to other available methods for the fair and efficient adjudication of the controversy, and will create a substantial benefit to both the public and the courts in that:

a. Costs of prosecuting the action individually will vastly exceed the costs for prosecuting the case as a class action;

b. Class certification will obviate the necessity of a multiplicity of claims;

c. It is desirable to concentrate the litigation of these claims in a single forum;

d. Unification of common questions of fact and law into a single proceeding before this Court will reduce the likelihood of inconsistent rulings, opinions, and decisions.

e. A class action is a superior means of fairly and efficiently resolving this dispute. Given the complexity of the issues presented here, individual claims are not sufficiently sizeable to attract the interest of highly able and dedicated

attorneys who will prosecute them on a contingency basis. A class action is therefore essential to prevent a failure of justice.

29. Plaintiffs are unaware of any difficulties that are likely to be encountered in the management of this Class Action Complaint that would preclude its maintenance as a class action.

**Rule 23(b) (2)**

30. This action is also appropriate as a class action pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure.

31. Plaintiffs also seek class-wide injunctive and corresponding declaratory relief. AB acted in a manner generally applicable to all class members by deliberately misrepresenting their products as containing more alcohol than they actually contain.

32. AB's wrongful conduct and practices, if not enjoined, will subject class members and other members of the public to substantial continuing harm and will cause irreparable injuries to class members who are misled and denied their rights.

***FIRST CAUSE OF ACTION***

**Violations of the Missouri Merchandising Practices Act, Mo. Ann. Stat. §§ 407.010 *et seq.* (Nationwide Class)**

33. Plaintiffs refer to and incorporate by reference all facts alleged in the preceding paragraphs as though fully set forth herein.

34. This claim is asserted on behalf of the Nationwide Class as alleged above.

35. The acts and practices engaged in by AB, and described herein, constitute unlawful and unfair business practices in violation of the Missouri Merchandising Practices Act, Mo. Ann. Stat. §§ 407.010 *et seq.* ("MMPA").

36. AB engaged in unlawful and/or unfair practices including deception, false promises, misrepresentation, and/or the concealment, suppression, or omission of material facts in connection with the sale, distribution or advertisement of the malt beverages identified in paragraph 12, in violation of Mo. Rev. Stat. § 407.020 by, among other things:

a. stating the alcohol content on the label of its malt beverage products as higher than it actually is, which has the tendency or capacity to mislead, deceive or cheat, or that tends to create a false impression;

b. making assertions on the label of its malt beverages that are not in accord with the facts;

c. choosing to include a statement of alcohol content on the label of its malt beverages but omitting to state that the represented alcohol content is not the actual alcohol content, a material fact necessary in order to make statements made, in light of the circumstances under which they are made, not misleading;

d. concealing and suppressing the actual alcohol content of its malt beverages, a material fact, from consumers;

e. failing to disclose the actual alcohol content of its malt beverages, a material fact that was known to AB or upon reasonable inquiry would be known to AB;

f. misrepresenting and failing to disclose the actual alcohol content of its malt beverage products and deliberately watering down the malt beverage products, which offends public policy of this state, is unethical, oppressive or unscrupulous, and presents a risk of or causes substantial injury to consumers.

37. Plaintiffs and Class members purchased one or more of the malt beverages identified in paragraph 12, which were manufactured in Missouri. As a result of AB's use or employment of a method, act or practice unlawful under the MMPA, Plaintiffs and the Class members suffered an ascertainable and economic loss in that the product purchased was worth less than it would have been worth had AB's representations been true.

//

//

//

//

***SECOND CAUSE OF ACTION***
**Violations of the Unfair Competition Law,**
**California Business & Professions Code § 17200 *et seq.***
**<u>Unlawful</u> Business Practices (California Class)**

38. Plaintiffs refer to and incorporate by reference all facts alleged in the preceding paragraphs as though fully set forth herein.

39. This claim and all remaining claims are asserted on behalf of the California Class, as alleged above.

40. Section 17200 of the California Business & Professions Code ("Unfair Competition Law" or "UCL") prohibits any "unlawful," "unfair" and "fraudulent" business practice.

41. Section 17200 specifically prohibits any "*unlawful* . . . business act or practice." AB violated § 17200's prohibition against engaging in an unlawful act or practice by, *inter alia,* selling to persons within California products in containers which misrepresent the amount of the alcohol content of such products.

42. In this regard, AB's manufacturing, marketing, distributing, and selling of malt beverages violated California's Sherman Food, Drug, and Cosmetics Law, Cal. Health & Saf. Code, §109875, *et seq*. ("Sherman Law").

43. The relevant part of the Sherman Law declares that "food is misbranded if its labeling is false or misleading in any particular" and further provides that it is unlawful for any person to misbrand any food. Cal. Health & Saf. Code, §§ 110660, 110765. Cal. Health & Saf. Code, § 110425 expressly provides that beer sales shall be subject to the misbranding provisions of the Sherman Law.

44. AB is a corporation and, therefore, a "person" within the meaning of the Sherman Law. Cal. Health & Saf. Code, § 109995.

45. The business practices alleged above are also unlawful under the Consumers Legal Remedy Act, Cal. Civ. Code §1750, *et seq*. ("CLRA"), which forbids deceptive advertising as set forth below.

46. Consumers, including Plaintiffs, necessarily and reasonably relied on the labels and advertisements for AB's products. Consumers, including Plaintiffs, were among the intended targets of such representations. Plaintiffs have suffered injury in fact and lost money or property as a result of AB's wrongful actions.

47. Additionally, the business practices alleged above violate California Penal Code § 496(a) in that AB received property obtained by false pretenses.

48. On information and belief, AB will continue to misrepresent the alcohol content of its products in violation of law unless enjoined by this Court from doing so.

49. As a result of the business practices described above, Business and Professions Code §17203 entitles Plaintiffs and class members, to an order enjoining such future conduct on the part of AB and such other orders and judgments which may be necessary to restore to any person in interest any money paid for AB's malt beverages attributable to AB's wrongful conduct.

50. Plaintiffs and Class members reserve the right to allege other violations of law which constitute other unlawful business acts or practices, as further investigation and discovery warrants. Such conduct is ongoing and continues to this date.

***THIRD CAUSE OF ACTION***

**Violations of the Unfair Competition Law,**
**California Business & Professions Code § 17200 *et seq.***
**<u>Unfair</u> Business Practices (California Class)**

51. Plaintiffs refer to and incorporate by reference all facts alleged in the preceding paragraphs as though fully set forth herein.

52. Section 17200 also prohibits any "*unfair* . . . business act or practice." As described in the preceding paragraphs, AB engaged in the unfair business practice of deliberately

manipulating the brewing process and producing malt beverages knowing that their alcohol content is mislabeled. Moreover, AB intentionally misrepresented the actual alcohol content of its products when offering them for sale within California. AB intentionally engaged in this conduct even though it was, and continues to be, feasible for AB to produce malt beverages extremely close to the exact alcohol levels stated on its labels or to change its labels to match the results of its production. By engaging in such conduct, AB unfairly obtained inflated prices for its products, and increased its sales volume by adding more water to its products.

53. AB's business practices, as detailed above, are unethical, oppressive and unscrupulous, and they violate fundamental policies of this State. Further, any justification for AB's wrongful conduct is outweighed by the adverse effects of such conduct. Plaintiffs and class members could not reasonably avoid the harm caused by AB's wrongful practices. Assuming, *arguendo*, that AB's practices are not express violations of the laws set forth above, those practices fall within the penumbra of such laws and a finding of unfairness can properly be tethered to the public policies expressed therein. Thus, AB engaged in unfair business practices prohibited by California Business & Professions Code § 17200 *et seq.*

## *FOURTH CAUSE OF ACTION*

**Violations of the Unfair Competition Law,**
**California Business & Professions Code § 17200 *et seq.***
**Fraudulent Business Practices (California Class)**

54. Plaintiffs refer to and incorporate by reference all facts alleged in the preceding paragraphs as though fully set forth herein.

55. Section 17200 also prohibits any "*fraudulent* business act or practice." AB violated this prong of the UCL by intentionally misrepresenting the actual alcohol content of its products when offering them for sale within California. AB's false statements about the alcohol content of its products were likely to deceive a reasonable consumer within the meaning of California Business and Professions Code § 17200.

*FIFTH CAUSE OF ACTION*

**Violations of the Consumer Legal Remedies Act, California Civil Code § 1750 *et seq.* (California Class)**

56. Plaintiffs refer to and incorporate by reference all facts alleged in the preceding paragraphs as though fully set forth herein.

57. This cause of action is brought pursuant to the Consumers Legal Remedies Act, California Civil Code §1750, *et seq.* (the "CLRA"), which provides protection for California consumers against unfair, deceptive and unlawful practices, and unconscionable commercial practices in connection with the sale of any goods or services.

58. Plaintiffs and the Class are "consumers" as defined by Cal. Civ. Code § 1761(d). The malt beverages produced, marketed and sold by AB constitute "goods" as defined by Cal. Civ. Code § 1761(a).

59. AB's ongoing deliberate manipulation of the brewing process and production of malt beverages, the alcohol content of which is intentionally misstated and inaccurate, violates the following subsections of Cal. Civ. Code §1770(a) in these respects:

a. (5) AB's acts and practices constitute misrepresentations that AB's malt beverages have characteristics, benefits or uses which they do not have;

b. (7) AB misrepresented that its malt beverages are of a particular standard, quality and/or grade, when they are of another;

c. (9) AB's acts and practices constitute the advertisement of goods, without the intent to sell them as advertised;

d. (16) AB's acts and practices constitute representations that malt beverages have been supplied in accordance with previous representations when they have not.

60. By reason of the foregoing, Plaintiffs and the Class have been harmed, entitling them to injunctive relief, actual and punitive damages, disgorgement and restitution.

61. Pursuant to § 1782 of the CLRA, by letter dated December 18, 2012, Plaintiffs notified AB in writing of the particular violations of § 1770 of the CLRA and demanded that AB rectify the actions described above. Plaintiffs sent this notice by certified mail, return receipt requested, to AB's agent for service of process. A copy of the letter is attached as Exhibit A.

62. On information and belief, AB's conduct alleged herein was and is fraudulent within the meaning of Cal. Civil Code § 3294(a) and (c)(3), and all such conduct was undertaken with the advanced authorization of officers, directors and/or authorized agents of AB.

63. Pursuant to § 1780(d) of the CLRA, attached hereto as Exhibit B are the affidavits showing that this action has been commenced in the proper forum.

## *SIXTH CAUSE OF ACTION*

**Breach of Implied Warranty of Merchantability**
**Cal. Com. Code § 2314 (California Class)**

64. Plaintiffs refer to and incorporate by reference all facts alleged in the preceding and succeeding paragraphs as though fully set forth herein.

65. AB is a "merchant" as to the products within the meaning of California Commercial Code § 2104. It manufactured, distributed and marketed the malt beverages, which are "goods" within the meaning of California Commercial Code § 2105. Consequently, pursuant to California Commercial Code § 2314, it impliedly warranted the malt beverages were merchantable, including that they would conform to the promises or affirmations of fact made on their containers or labels.

66. Plaintiffs and Class members purchased AB's malt beverages, which, as stated above, bore promises or affirmations of fact on their containers or labels with respect to the stated percentages of alcohol. As also stated above, AB breached the implied warranty of merchantability accompanying such transactions, because Plaintiffs and Class members did not receive goods that conformed to the promises or affirmations of fact on their containers or labels. Cal. Com. Code § 2314(1) and (2)(f).

67. As provided by California Commercial Code § 2607, Plaintiffs, individually and on behalf of the Class, notified AB in writing of its breach of warranty to give AB the opportunity to cure such breach. Plaintiffs sent this notice by certified mail, return receipt requested, to AB's registered agent for service of process. A copy of the letter is attached as Exhibit A.

68. AB has not cured the above breach of warranty. As a proximate result of this breach of warranty by AB, Plaintiffs and the Class have suffered damages in an amount to be determined at trial.

***SEVENTH CAUSE OF ACTION***

**Violation of Magnusson-Moss Warranty Act,**
**15 U.S.C.A. § 2301, *et seq*. (California Class)**

69. Plaintiffs refer to and incorporate by reference all facts alleged in the preceding and succeeding paragraphs as though fully set forth herein.

70. Plaintiffs and Class members are consumers as defined in 15 U.S.C. § 2301(3).

71. AB is a supplier and warrantor as defined in 15 U.S.C. § 2301(4) and (5).

72. AB's malt beverages, as listed above, are consumer products as defined in 15 U.S.C. § 2301(1).

73. In connection with their sale of malt beverages, AB gave to Plaintiffs and all Class members who purchased the malt beverages an implied warranty as defined in 15 U.S.C. § 2301(7); namely, the implied warranty of merchantability. Specifically, AB warranted that the malt beverages would conform to the promises or affirmations of fact made on their containers or labels. Because the malt beverages did not conform to the promises and affirmations of fact about alcohol content made on their containers or labels, AB breached the implied warranty of merchantability.

74. AB's malt beverages, as listed above, are not governed by the Federal Food, Drug and Cosmetics Law.

75. By reason of AB's breach of the implied warranty of merchantability, AB proximately caused damage to Plaintiffs and the Class and is therefore liable to Plaintiffs and Class members pursuant to 15 U.S.C. § 2310(d)(1), . Pursuant to 15 U.S.C. § 2310(d)(1), Plaintiffs and the Class are entitled to recover the damages proximately caused to them by AB's breaches of implied warranty. In addition, pursuant to 15 U.S.C. § 2310(d)(2), Plaintiffs and the Class are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have been reasonably incurred by Plaintiffs and the Class for and in connection with the commencement and prosecution of this action.

76. Pursuant to 15 U.S.C. § 2310(e), on behalf of themselves and the Class, Plaintiffs notified AB in writing of its breach of warranty and violation of the MMWA to give AB the opportunity to cure such breach and violation. Plaintiffs sent this notice by certified mail, return receipt requested, to AB's registered agent for service of process. A copy of the letter is attached as Exhibit A. AB has not cured its breach as to Plaintiffs or any other members of the Class.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of the class, pray for an order:

a. Declaring this a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the proposed Class described herein and appointing Plaintiffs to serve as class representatives and Plaintiffs' counsel as Lead Counsel for the Classes;

b. Preliminarily and permanently enjoining Defendant from continuing to misrepresent the alcohol content of its malt beverages, and from pursuing the above policies, acts and practices related to such sales;

c. Requiring Defendant to fund a corrective advertising campaign in order to remedy its wrongful and illegal conduct;

d. Awarding restitution of the monies Defendant wrongfully acquired by its wrongful and illegal conduct;

e. Requiring disgorgement of monies wrongfully obtained as a result of Defendant's wrongful and illegal conduct;

f. Awarding compensatory damages, including actual and statutory damages, arising from Defendant's wrongful and illegal conduct;

g. Awarding exemplary damages as allowed by law;

h. Awarding treble damages pursuant to California Penal Code § 496(c);

i. Awarding reasonable attorneys' fees and all costs and expenses incurred in the course of prosecuting this action;

j. Awarding pre-judgment and post-judgment interest at the legal rate; and

k. For such other and further relief as the Court deems just and proper.

**REQUEST FOR JURY TRIAL**

Plaintiffs hereby demand a jury trial on all issues so triable.

Dated: February 22, 2013

Respectfully submitted,
**THE MILLS LAW FIRM**

By: ______________________
Robert W. Mills (SBN 062154)
Joshua D. Boxer (SBN 226712)
Corey B. Bennett (SBN 267816)

**BRAMSON, PLUTZIK, MAHLER & BIRKHAEUSER**
Robert Bramson, Esq. (Bar No. 102006)

*Attorneys for Plaintiffs Nina Giampaoli, John Elbert, and the Proposed Classes*